### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| BOUCHARD TRANSPORTATION | ) | |
| CO., INC., B. NO. 255 CORP., and | ) | |
| TUG BUSTER BOUCHARD CORP. | ) | |
| | ) | Case No. 4:18-cv-2563 |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HOMELAND | ) | |
| SECURITY, REAR ADMIRAL PAUL | ) | |
| F. THOMAS, U.S. COAST GUARD and | ) | |
| LEAD INVESTIGATOR BRUCE DAVIES | ) | |

### FEDERAL DEFENDANTS' FIRST AMENDED RULE 12 AND RULE 56 MOTION AND INCORPORATED MEMORANDUM SEEKING DISMISSAL OF PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND WRIT OF MANDAMUS

Federal defendants, which include the U.S. Department of Homeland Security, Rear Admiral (RADM) Paul Thomas, U.S. Coast Guard, and Lead Investigating Officer Bruce Davies, previously moved to dismiss this lawsuit under Federal Rule of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction), Rule 12(b)(6) (failure to state a claim upon which relief can be granted), and Rule 56 (summary judgment). *See* ECF No. 6 (U.S. Mot. & Mem.). The original motion is hereby amended to comply with procedural requirements applicable to cases before District Judge Gray H. Miller.

## Table of Contents

Table of Contents..................................................................................................i

Table of Authorities...........................................................................................ii

STATEMENT OF THE CASE ............................................................................1

NATURE AND STAGE OF THE PROCEEDING ................................................1

SUMMARY OF THE ARGUMENT ...................................................................2

STATEMENT OF THE ISSUES ........................................................................3

STANDARDS OF REVIEW .............................................................................4

    I.    Rule 12(b)(1) Motion to Dismiss .............................................................4

    II.    Rule 12(b)(6) Motion to Dismiss .............................................................4

    III.    Rule 56 Motion for Summary Judgment ..................................................4

STATEMENT OF FACTS .................................................................................5

    I.    The Fire and Explosion ...........................................................................5

    II.    Statutory and Regulatory Authority.........................................................6

    III.    This Marine Casualty Investigation .....................................................10

DISCUSSION.................................................................................................12

    I.    The Declaratory Judgment Act Does Not Waive Sovereign Immunity .............12

    II.    Dismissal is Appropriate for Lack of Subject Matter Jurisdiction at this Stage..13

        A.    Application of the APA ..................................................................13

        B.    The APA Does Not Waive Sovereign Immunity Until There Is Final Agency Action, which Has Yet to Occur ......................................15

        C.    As the Coast Guard Does Not Exceed Statutory or Regulatory Limits, the APA's Finality Requirement Stands................................17

            1.  Scope of the Investigation .................................................18

            2.  Evidentiary Rulings .........................................................20

            3.  Party in Interest Designations...........................................20

            4.  No Balancing of Interests Is Required...............................21

III.   Bouchard Has No Clear Right to Mandamus Relief, the Coast Guard's Actions
Are Discretionary, and the APA Offers a Sufficient Remedy.............................21

CONCLUSION ............................................................................................................23

## Table of Authorities

**Cases**

*Am. Airlines, Inc. v. Herman*,
176 F.3d 283 (5th Cir. 1999) ........................................................... 14, 17, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................... 5

*Anderson v. United States*,
229 F.2d 675 (5th Cir. 1956) ...................................................................... 13

*Belle Co., L.L.C. v. U.S. Army Corps of Eng'rs*,
761 F.3d 383 (5th Cir. 2014) ...................................................................... 14

*Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot &*
*Wansbrough,* 354 F.3d 348 (5th Cir. 2003).................................................... 4

*Boston Marine Terminal v. Rederiaktiebolaget Transatlantic*,
400 U.S. 62 (1970)................................................................................ 14, 15

*Califano v. Sanders*,
430 U.S. 99 (1977)...................................................................................... 14

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...................................................................................... 5

*Chrysler v. Brown*,
441 U.S. 281 (1979).................................................................................... 14

*Coca-Cola Co. v. Fed. Trade Comm'n*,
475 F.2d 299 (5th Cir. 1973) ................................................................ 17, 18

*Cooper Tire & Rubber Co. v. Farese*,
423 F.3d 446 (5th Cir. 2005) ........................................................................ 5

*Dow Chem. Co. v. EPA*,
832 F.2d 319 (5th Cir. 1987) ...................................................................... 16

*FDIC v. Meyer*,
510 U.S. 471 (1994).................................................................................... 13

*Fed. Trade Comm'n v. Standard Oil of Cal.*,
449 U.S. 232 (1980)................................................................................ 15, 16

*Fleetwood Enter., Inc. v. U.S. Dep't of Housing & Urban Dev.*,
   818 F.2d 1188 (5th Cir. 1987) ...................................................22

*Green v. Heckler*,
   742 F.2d 237 (5th Cir. 1984) .....................................................22

*Guillory v. PPG Indus., Inc.*,
   434 F.3d 303 (5th Cir. 2005) .......................................................5

*Home Builders Ass'n of Miss., Inc. v. City of Madison*,
   143 F.3d 1006  (5th Cir. 1998) ...................................................4

*In re Willy*,
   831 F.2d 545 (5th Cir. 1987) ...............................................17, 20

*Jones v. Alexander*,
   609 F.2d 778 (5th Cir. 1980) .....................................................22

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ...................................................................12

*Lee v. U.S. Citizenship and Immigration Servs.*,
   592 F.3d 612 (4th Cir. 2010) .....................................................14

*Lujan v. Nat'l Wildlife Fed.*,
   497 U.S. 871 (1990) ...................................................................14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .....................................................................5

*McKart v. United States*,
   395 U.S. 185 (1969) ...................................................................17

*Pittston Coal Group v. Sebben*,
   488 U.S. 105 (1988) ...................................................................22

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) ..................................................4, 12

*Richardson v. Monitronics Int'l, Inc.*,
   434 F.3d 327 (5th Cir. 2005) .......................................................5

*Shanbaum v. United States*,
   32 F.3d 180 (5th Cir. 1994) .......................................................13

*Sierra Club v. Peterson*,
   228 F.3d 559 (5th Cir. 2000) .....................................................14

*Skelly Oil Co. v. Phillips Petroleum Co.*,
   339 U.S. 667 (1950) ...................................................................13

*Stockman v. Fed. Election Comm'n*,
   138 F.3d 144 (5th Cir. 1998) .....................................................12

*Veldhoen v. U.S. Coast Guard*,
    35 F.3d 222 (5th Cir. 1994) ............................................................3, 12, 15, 16, 17, 21
*Warfield v. Byron*,
    436 F.3d 551 (5th Cir. 2006) ........................................................................................5

**Statutes**

28 U.S.C. § 1331 ......................................................................................................14
28 U.S.C. § 1361 ......................................................................................................22
28 U.S.C. §§ 2201-02 ..........................................................................................3, 13
46 U.S.C. § 6301 ..............................................................................................6, 8, 21
46 U.S.C. § 6302 ........................................................................................................7
46 U.S.C. § 6303 ..................................................................................................8, 23
5 U.S.C. § 551 ..........................................................................................................13
5 U.S.C. § 704 ..................................................................................................4, 14, 15
Pub. L. 98–89............................................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(1) ........................................................................................4, 23
Fed. R. Civ. P. 12(b)(6) ........................................................................................4, 23
Fed. R. Civ. P. 56(c) ............................................................................................5, 23

**Regulations**

46 C.F.R. § 1.03-15 ............................................................................................10, 16
46 C.F.R. § 4.03-1 ..................................................................................................6, 7
46 C.F.R. § 4.03-10 ..................................................................................8, 17, 22, 23
46 C.F.R. § 4.07-1 ...............................................................................................6, 7, 21
46 C.F.R. § 4.07-10 ..................................................................................................17
46 C.F.R. § 4.07-35 ....................................................................................................8
46 C.F.R. Part 4 ..............................................................................................3, 6, 13
46 CFR 4.07-1 ............................................................................................................7

**Other Authorities**

13B Fed. Prac. & Proc. Juris. § 3532.6 (3d ed. 2018)....................................................17
5 USCG Marine Safety Manual ..............................................................................passim

## STATEMENT OF THE CASE

Three companies that own or operate an integrated tug and barge combination challenge the U.S. Coast Guard's authority to investigate the circumstances surrounding a fire and explosions that occurred on the barge on October 20, 2017, and resulted in the death of two crew members.  Plaintiffs contend that the investigation exceeds the scope permitted by Title 46, Chapter 63 (Investigating Marine Casualties) and 46 C.F.R. Part 4 (Marine Casualties & Investigations).  They further contend that the investigation is being performed in retaliation for Bouchard's response to the agency's inspection efforts in recent years.   Finally, Plaintiffs object with particularity to the designation of representatives of the decedent crew members as parties in interest and to evidentiary rulings made by the lead investigating officer.  Plaintiffs seek relief in the form of a declaratory judgment, an injunction, and a writ of mandamus.

## NATURE AND STAGE OF THE PROCEEDING

During the early morning hours of October 20, 2017, as Barge Captain Zachariah Jackson and Tankerman Du'jour Vanterpool were raising the anchor of Barge B. No. 255, a fire erupted and explosions occurred.  Both men died, oil spilled into the Gulf of Mexico, and, as shown in the photograph below, a gaping hole was torn in the forward deck of the barge.  At the time, the barge was anchored off the coast of Port Aransas, Texas, and the crew was preparing to get underway.  The accident vessels, Tug BUSTER BOUCHARD and the barge were connected to form an integrated unit.[1]

---

[1] Integrated tug and barge units are widely used in the U.S. Gulf of Mexico and the U.S. East Coast offshore trade.  The barge is contoured like a ship's hull and its stern is



*Figure 1 (courtesy U.S. Coast Guard)*

The vessels are operated by Bouchard Transportation Company, Inc., and owned by related corporations, all of which are plaintiffs in this suit (collectively "Bouchard"). In bringing this action, Bouchard seeks to restrict the Coast Guard's investigation into the incident. The complaint was accompanied by a motion seeking a temporary restraining order, which the Court previously denied. *See* ECF No. 5 (Order). Federal defendants now move to dismiss the complaint or, alternatively, move for summary judgment.

## SUMMARY OF THE ARGUMENT

Title 46, Chapter 63 (Investigating Marine Casualties) sets the scope and procedure for the Coast Guard's investigation of marine casualties.[2] Implementing regulations are

---

notched to receive a special tug that fits into that notch to form a single vessel. *See* https://www.globalsecurity.org/military/systems/ship/itb.htm (accessed Aug. 2, 2018).

[2] *See* Act of Aug. 26, 1983 (revising, consolidating, and enacting certain laws related to vessels and seaman), Pub. L. 98–89, 97 Stat. 537-38 (relevant passages) (codified as

found at 46 C.F.R. Part 4 (Marine Casualties & Investigations).  Volume 5 of the U.S. Coast Guard Marine Safety Manual (COMDTINST M16000.10A) provides agency investigators with additional guidance.[3]

Neither the aforementioned statute, nor the regulations, contemplate direct judicial review.  As a result, Bouchard's right to review, if any, comes through the Administrative Procedure Act (APA), which requires final agency action before allowing judicial review.

Dismissal of ECF No. 1 (Compl.) is appropriate, first, because there is no final agency action.  There is controlling precedent.  *See Veldhoen v. U.S. Coast Guard*, 35 F.3d 222 (5th Cir. 1994).  Second, the manner in which the Coast Guard is performing this investigation easily satisfies statutory and regulatory requirements, which means that—contrary to Bouchard's position—no exception to the APA's finality requirement applies.  Third, Bouchard's request for mandamus relief is misplaced for three reasons:  Plaintiffs have no clear right to relief; the Coast Guard actions at issue are discretionary; and the APA offers an adequate remedy.

### STATEMENT OF THE ISSUES

1.    Whether the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, waives sovereign immunity.

2.    Whether there is final agency action, or an exception thereto, that allows Plaintiffs to bring suit notwithstanding the Administrative Procedure Act's finality

---

amended at 46 U.S.C. §§ 6301-08).

[3] Volume 5 is 650 pages long.  The handful of sections referred to herein are excerpted within U.S. Exhibit A.

requirement.  *See* 5 U.S.C. § 704 (requiring final agency action).

3.     Whether Plaintiffs demonstrate (1) a clear right to the relief sought, (2) which defendants have a nondiscretionary duty to perform, and (3) show that no other adequate remedy is available, thus establishing an entitlement to mandamus relief.

**STANDARDS OF REVIEW**

## I.   Rule 12(b)(1) Motion to Dismiss

When a court appears to lack statutory or constitutional power to adjudicate a case, an opposing party may move to dismiss the cause under Federal Rule of Civil Procedure 12(b)(1).  *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  And when, as here, a Rule 12(b)(1) motion is filed in conjunction with another Rule 12 motion, the court should first consider the Rule 12(b)(1) jurisdictional attack.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).

## II.   Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  A district court should not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief.  *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough,* 354 F.3d 348, 351 (5th Cir. 2003).

## III.   Rule 56 Motion for Summary Judgment

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party must demonstrate that there are no genuine issues of material fact.  *See Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).  An issue is "material" if its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248.

To preclude summary judgment in responding to a properly supported motion, the nonmovant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005).  In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

## STATEMENT OF FACTS

### I.   **The Fire and Explosion**

The basic facts are not in dispute.  Bouchard "operate[s] a U.S. flagged fleet of tugs and barges engaged in the transportation of petroleum products to and from various ports throughout the United States[,]" including the Tug BUSTER BOUCHARD and Barge B. No. 255.  ECF No. 1 (Compl.) ¶¶ 1, 2.  Barge B. No. 255 is owned by the B. No. 255 Corp. *Id*. ¶ 3.  "Tug Buster Bouchard Corp. owns the TUG BUSTER BOUCHARD."  *Id*. ¶ 4.

According to Bouchard, "[o]n the morning of October 20, 2017, the B-255 and TUG BUSTER BOUCHARD were navigating through the Gulf of Mexico, near Aransas Pass, Texas."[4]  *Id.* ¶ 8.  "At approximately 04:30 a.m., an explosion occurred on the B-255, resulting in the loss of two crewmembers, Zachariah Jackson and Dujour Vanterpool . . . ." *Id.* ¶ 9.

## II.    Statutory and Regulatory Authority

Congress directed the Coast Guard to prescribe regulations for the investigation of marine casualties.[5]  *See* 46 U.S.C. § 6301.  Those regulations, set forth at 46 C.F.R. Part 4 (Marine Casualties & Investigations), define a marine casualty as:

> Any casualty or accident involving any vessel other than a public vessel that— (1) Occurs upon the navigable waters of the United States, its territories or possessions; [or] (2) Involves any United States vessel wherever such casualty or accident occurs . . . .

46 C.F.R. § 4.03-1(a); *see also* 5 USCG Marine Safety Manual at B7-1 (offering a similar definition).  The accident vessels meet both criteria.  The regulations further state that the term "marine casualty or accident" includes a fire or explosion.  46 C.F.R. § 4.03-1(b); *see*

---

[4] Bouchard writes that the vessels "were navigating" when the casualty occurred, however, eye-witnesses on the tug testified during the Coast Guard hearing that the two-man barge crew was attempting to raise the barge's anchor at the time.  After the explosions, the tug disconnected from the barge, which remained anchored.

[5] The agency must determine, as closely as possible, the cause of the casualty; whether the actions of individuals licensed, certificated, or documented by the agency contributed to its occurrence; whether an action of an individual in the Coast Guard contributed to its occurrence; whether an act subjecting an offender to civil or criminal liability was committed; and whether there is a need to amend or repeal existing laws or regulations, or to pass new ones, so as to prevent a similar casualty in the future.  *See* 46 U.S.C. § 6301; *cf.* 46 C.F.R. § 4.07-1 (levying similar requirements).

*also* 5 USCG Marine Safety Manual at B7-1 (offering a similar statement).

The Coast Guard performs different types of marine casualty investigations, formal or informal, depending on the event at issue. A formal marine casualty investigation is appropriate when, as here, the casualty involves a U.S.-flagged commercial vessel and, *inter alia*, results in two or more deaths. *See* 5 USCG Marine Safety Manual at A5-8.

The USCG Marine Safety Manual discusses the authority for and purpose of a District Formal Marine Casualty Investigation, which is the particular kind of investigation that the Coast Guard is undertaking to assess the Barge B. No. 255 incident:

> The authority to convene a District Formal Investigation is found in 46 CFR 4.07-1. As with the decision to convene a Marine Board, the decision to convene a District Formal Investigation is influenced primarily by the lessons to be derived from the casualty. If the information to be derived has considerable regional significance, or indicates vessel class problems or areas of technical importance, the District Commander may convene a formal investigation to assure that every aspect of the case is probed. Additionally, broad or intense public interest may warrant the formalities of a District Formal Investigation. A District Formal Investigation is composed of one specially designated Lead Investigating Officer (LIO) as the presiding officer. The District Commander may also designate specialists or technical experts to assist the LIO.

5 USCG Marine Safety Manual at A5-11.

Congress set other statutory requirements that control marine casualty investigations. For example, unless evidence affecting national security is anticipated, hearings are open to the public. *See* 46 U.S.C. § 6302; 5 USCG Marine Safety Manual at A5-16. Coast Guard policy encourages broad media coverage:

> Expanded media coverage is coverage of proceedings by audio or video recording, television or radio broadcasting, cable television transmission, still or motion picture photography, or by any other audio or video medium of communication to the public. The Coast Guard's policy is

> to permit expanded media coverage of marine casualty investigations conducted under the provisions of 46 USC 6301 to the maximum extent possible and consistent with the proper and orderly functioning of the investigation.

5 USCG Marine Safety Manual at A5-17.

In performing a formal marine casualty investigation, the Coast Guard designates persons or organizations as parties in interest.  Parties in interest are entitled to representation by counsel and to call and cross-examine witnesses.  *See* 46 U.S.C. § 6303; 46 C.F.R. § 4.07-35(a).

Certain party in interest designations are mandatory.  For example, Section 6303 presumes the accident vessel owner, like Bouchard, to be a party in interest.  *See* 46 U.S.C. § 6303; *see also* 46 C.F.R. § 4.03-10 (requiring designation of the vessel owner).  Other parties are designated at the investigating officer's discretion.[6]

The USCG Marine Safety Manual further provides that "[a]ny individual, organization, or other entity that can demonstrate the potential for contributing significantly to the completeness of the investigation, or otherwise enhanc[e] the safety of life and property at sea" may be designated as a party in interest.  5 USCG Marine Safety Manual at A5-15.  The American Bureau of Shipping (ABS), a classification society, was

---

[6] *See* 46 C.F.R. § 4.03-10 ("The term *party in interest* shall mean any person whom the Marine Board of Investigation or the investigating officer shall find to have a direct interest in the investigation conducted by it . . . .") (emphasis original); 5 USCG Marine Safety Manual at A5-14 ("A party in interest, as defined in 46 USC 6303 and 46 CFR 4.03-10, includes any individual, organization, or entity that a Marine Board or IO finds to have a direct interest, in the investigation being conducted, as well as those specifically listed in the statute.").

designated in the course of this investigation.[7]

When appropriate, the Coast Guard may also designate the representative of a decedent as a party in interest.  *See id*. A5-14 to A5-15.  A decedent's next of kin does not ordinarily qualify, however, his or her representative may be appointed if the investigating officer finds that the representative has a direct interest.  *See* U.S. Exhibit B (Marine Casualty Investigation Parties in Interest Policy) at 1-2.

Once the investigating officer has prepared a Report of Investigation (ROI), he submits it for intermediate endorsement and approval.   ROIs can, but do not always, contain safety recommendations.  *See* USCG Marine Safety Manual at B1-2 to B1-3.  Safety recommendations are designed to "address those unsafe conditions over which control can be exercised" and may take the form of changes to "conventions, laws, regulations, policies, or procedures."  *Id*. at B1-3. When, as here, the investigation is convened by a District Commander, either the District Commander or the Commandant serves as the final action authority, depending on whether there are, in fact, safety recommendations and, if so, the form that they take.  *See id*. A7-1 to A7-2.

Persons affected by findings of fact, conclusions, or safety recommendations may ask that the investigation be reopened or that parts of the ROI be reconsidered or revised.  *See* 5 USCG Marine Safety Manual at A7-1 to A7-3.  Such a person may also file an administrative appeal.  *See generally* 46 C.F.R. Subpart 1.03 (Rights of Appeal); 5 Marine

---

[7] A classification society like ABS sets technical standards for the construction and operation of ships.  It also inspects member vessels and operators to ensure ongoing compliance.  *See generally* https://web.archive.org/web/20070119074545/http://www.eagle.org/company/Classmonograph.pdf (accessed Aug. 19, 2018).

Safety Manual at A7-4 (discussing the process).   According to regulation, the Commandant's decision on appeal, or that of his designee, results in final agency action. *See* 46 C.F.R. § 1.03-15(j).

### III.    This Marine Casualty Investigation

On October 23, 2017, RADM Thomas, Commander, Eighth Coast Guard District, directed Mr. Bruce Davies, Coast Guard Sector Houston-Galveston, to take the lead in examining the explosion, loss of life, and pollution related to the Barge B. No. 255 incident of October 20, 2017.   *See* U.S. Exhibit C (Convening Order).   RADM Thomas also appointed legal counsel and provided investigatory support.   *Id.*   Mr. Davies is aided by two assistant investigating officers, a technical advisor, and a recorder.   *See* U.S. Exhibit D (Appointment of Additional Members).

Earlier, Bouchard opposed another aspect of this investigation.   Specifically, on November 22, 2017, it moved to quash a U.S. Coast Guard subpoena and requested the return of certain vessel logs collected by the Coast Guard from the Tug BUSTER BOUCHARD and Barge B. No. 255 after the casualty.   *See* No. 2:17-cv-1077 (S.D. Tex.), ECF No. 1 (Bouchard Mot.).

More recently, on July 5, 2018, Bouchard objected to the designation of representatives of the estates of Vanterpool and Jackson as parties in interest.   *See* U.S. Exhibit E (E-Mail USCG (van de Krol)/Bouchard (James)).   The Coast Guard responded on July 6, declining to withdraw the designation.   *Id.*   Bouchard complains that the marine casualty investigation has become a vehicle that will advance civil actions for money damages against it.   *Id.*

10

On July 13, 2018, Bouchard also objected that the Coast Guard was, as Bouchard put it, "expanding the scope of the investigation to matters unrelated and irrelevant to the explosion aboard the B. No. 255." *See* U.S. Exhibit F (Bouchard Ltr.).  Bouchard also objected to the admission of certain exhibits at the hearing, claiming they are immaterial and irrelevant. *Id.*  On July 14, 2018, Bouchard objected to three more exhibits on the same basis. *See* U.S. Exhibit G (Bouchard Ltr.).  The objections were denied by the investigating officer as he presided over the hearing.

On July 15, 2018, Bouchard appealed the investigating officer's denials. *See* U.S. Exhibit H (Bouchard Ltr.).  Bouchard asked the convening authority, RADM Thomas, to "minimize the unnecessary and illegal broadening of the scope of the investigation into matters irrelevant to the Incident and beyond the statutory and regulatory authority granted; and (2) reverse the designation of deceased crew members Vanderpool's [sic] and Jackson's counsel as Parties in Interest." *Id.*  On July 18, 2018, RADM Thomas denied Bouchard's appeal. *See* U.S. Exhibit I (USCG Ltr.).

Bouchard then appealed RADM Thomas's decision, on July 22, 2018. *See* U.S. Exhibit J (Bouchard Ltr.).  On July 25, 2018, RADM John Nadeau, USCG, Assistant Commandant for Prevention Policy, denied that appeal. *See* U.S. Exhibit K (USCG Ltr.).

As the objections moved through agency review, testimony was taken from twenty-three witnesses over a course of weekdays, from Monday, July 6, to Thursday, July 26, 2018, at the Coast Guard Sector Houston-Galveston facility, which is located near

Pasadena, Texas.  The hearing testimony was televised to the public through Livestream.[8]

Bouchard filed the complaint at issue, ECF No. 1, accompanied by a motion seeking injunctive relief, on Tuesday, July 24, 2018.  *See* ECF No. 2 (Pls.' Verified Emergency Mot.).  On Wednesday, July 25, 2018, this Court denied the motion.  *See* ECF No. 5 (Order) ("Because the Plaintiffs failed to meet their initial burden of showing entitlement to the extraordinary remedy they seek, the instant motion is DENIED.").  Live testimony concluded on Thursday, July 26, 2018.  Afterward, the complaint was served on the United States.  The federal defendants now move for its dismissal.

## DISCUSSION

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("[A]bsent jurisdiction conferred by statute, [federal courts] lack the power to adjudicate claims.")).  A court begins with the presumption that it does not have subject matter jurisdiction.  *Id*. at 377.  Jurisdiction must be demonstrated, and the party asserting jurisdiction "constantly bears the burden of proof" to show that it exists.  *Ramming*, 281 F.3d at 161.

### I.    The Declaratory Judgment Act Does Not Waive Sovereign Immunity

In Count I, Bouchard argues that it is entitled to relief under the Declaratory

---

[8] Livestream allows users to broadcast live video content given a camera, computer, and access to the Internet.  *See* https://en.wikipedia.org/wiki/Livestream (accessed Aug. 6, 2018).

Judgment Act, 28 U.S.C. §§ 2201-02.  *See* ECF No. 1 (Compl.) ¶¶ 18-21.  The flaw in the argument is that the United States as a sovereign is immune from suit except as it consents. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (any claim for which sovereign immunity has not been waived must be dismissed for lack of jurisdiction); *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994) ("The United States may not be sued except to the extent that it has consented to such by statute.").

The Declaratory Judgment Act does not waive sovereign immunity.  *See Skelly Oil Co. v. Phillips Petroleum Co*., 339 U.S. 667, 671-72 (1950) (Declaratory Judgment Act does not provide a "right of entrance to federal courts"); *Anderson v. United States*, 229 F.2d 675, 677 (5th Cir. 1956) (Declaratory Judgment Act does not operate as a waiver of sovereign immunity).  As that Act does not waive immunity, Bouchard must look elsewhere for a waiver.  The APA may ultimately provide one, however, this suit is premature under that statute.

## II.     Dismissal is Appropriate for Lack of Subject Matter Jurisdiction at this Stage

### A.     Application of the APA

In Count II, Bouchard argues that it is entitled to injunctive relief.  *See* ECF No. 1 (Compl.) ¶¶ 22-28.  Neither Title 46, Chapter 63 (Investigating Marine Casualties), nor 46 C.F.R. Part 4 (Marine Casualties & Investigations), provide for direct judicial review of the investigation, however, the Department of Homeland Security—a federal agency as defined by the APA—is named, as are RADM Thomas and Mr. Davies, both officials in the Department.  *See* 5 U.S.C. § 551(1); *see also* ECF No. 1 (Compl.) ¶ 5 (making the same point).

13

Again, Bouchard's right to review, if any, comes through the APA. "When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 882 (1990).[9] 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no adequate remedy in a court are subject to judicial review."); *Belle Co., L.L.C. v. U.S. Army Corps of Eng'rs*, 761 F.3d 383, 387 (5th Cir. 2014) (citing 5 U.S.C. § 704 to this effect). "If there is no final agency action, a court lacks subject matter jurisdiction." *Id*. at 388 (citing *Am. Airlines, Inc. v. Herman*, 176 F.3d 283 (5th Cir. 1999) and *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000)).

The investigating officer's determinations are "[a]dministrative orders [that] are not reviewable unless and until they impose an obligation, deny a right or fix some legal relationship." *Am. Airlines,* 176 F.3d at 287 n.4 (quoting *Boston Marine Terminal v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970) (omitting internal punctuation)). The converse, also true, is that "[u]nder the APA, agency action that is merely 'preliminary, procedural, or intermediate' is subject to judicial review at the termination of the

---

[9] The APA is read in conjunction with the federal question statute. *See Chrysler v. Brown*, 441 U.S. 281, 317 n.47 (1979) ("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331.") (citing *Califano v. Sanders*, 430 U.S. 99 (1977)); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Because the APA does not confer jurisdiction, "the jurisdictional source for an action under the APA is the 'federal question' statute." *Lee v. U.S. Citizenship and Immigration Servs*., 592 F.3d 612, 619 (4th Cir. 2010).

proceeding in which the interlocutory ruling is made." *Id*. (citing 5 U.S.C. § 704; *Fed. Trade Comm'n v. Standard Oil of Cal*., 449 U.S. 232, 245 (1980)).

**B.   The APA Does Not Waive Sovereign Immunity Until There Is Final Agency Action, which Has Yet to Occur**

In *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222 (5th Cir. 1994), the chief officer and third officer of a ship involved in a collision, both on duty at the time of the accident, challenged the Coast Guard's authority to perform a marine casualty investigation. *Id*. at 224. The collision occurred on the high seas, and there were no claims from American passengers. *Id*. The officers argued that, on their particular facts, the Coast Guard lacked jurisdiction to investigate. *Id*. "They also argued that their careers could suffer irreparable harm if the hearing was allowed to continue." *Id*.

At the district level, the *Veldhoen* court "denied the petition because it found that the sailors [*i.e*., the ship's officers] had failed to demonstrate a reasonable likelihood of success on the merits." *Id*. The Fifth Circuit affirmed, but on a different basis. Accepting an argument raised by the government on appeal, the Fifth Circuit held there was no subject matter jurisdiction due to a lack of final agency action:

> Here, the sailors' petition was filed in district court in an attempt to shortcut the proceedings at the start of the Marine Board inquiry. The finality doctrine, however, does not allow this circumnavigation. The obligation to defend oneself before an agency is not the type of obligation that creates final agency action.

*Id*. at 226.

The Fifth Circuit noted that, to be deemed final, an agency's action must impose an obligation, deny a right, or fix a legal relationship. *Id*. The investigation before it did not.

15

*See id*. at 225 ("An agency's initiation of an investigation does not constitute final agency action.") (citing *Standard Oil Co*., 449 U.S. at 239-45) and *Dow Chem. Co. v. EPA*, 832 F.2d 319, 325 (5th Cir. 1987) ("allegation made in enforcement suit does not impose the kind of legal obligation with which the finality doctrine is concerned")).

The Code of Federal Regulations, at 46 C.F.R. § 1.03-15(j), states that "[a]ny decision made by the Commandant . . . , or by the Assistant Commandant for Prevention Policy (CG-5P), . . . is final agency action on appeal."  Even so, the investigating officer's decision to designate decedents' representatives as parties in interest and the evidentiary rulings about which Bouchard complains are of a procedural or an intermediate nature; they are discrete steps within a larger process that has yet to terminate in final agency action.  Finality on the matters that Bouchard has raised does not constitute finality with respect to the ROI as a whole.

Final agency action will be consummated after two conditions are met.  First, the lead investigator must prepare the ROI and submit it to the approving official and, second, that official must endorse the ROI:

> At the conclusion of the investigation the investigating officer shall submit to the Commandant via the Officer in Charge, Marine Inspection, and the District Commander, a full and complete report of the facts as determined by his investigation, together with his opinions and recommendations in the premises.  The Officer in Charge, Marine Inspection, and the District Commander shall forward the investigating officer's report to the Commandant with an endorsement stating:
>
> (1) Approval or otherwise of the findings of fact, conclusions and recommendations;
>
> (2) Any action taken with respect to the recommendations;

(3) Whether or not any action has been or will be taken under part 5 of this subchapter to suspend or revoke credentials; and,

(4) Whether or not violations of laws or regulations relating to vessels have been reported on Form CG-2636, report of violation of navigation laws.

46 C.F.R. § 4.07-10(a).

Judicial relief is properly sought only after the investigation has been completed. *See, e.g., In re Willy*, 831 F.2d 545, 549 (5th Cir. 1987) (declining review of a Department of Labor ALJ's ruling on a discovery matter because "it is usually 'more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages'") (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)); *Am. Airlines*, 176 F.3d at 288 ("If trial courts are insulated from this kind of interference, . . . certainly administrative tribunals ought to be and, indeed, they generally have been immune from interlocutory review of procedural rulings.") (quoting *Coca-Cola Co. v. Fed. Trade Comm'n*, 475 F.2d 299, 304 (5th Cir. 1973)); Charles Alan Wright, Arthur R. Miller, *et al.*, *Administrative Review*, 13B Fed. Prac. & Proc. Juris. § 3532.6 (3d ed. 2018) ("As to adjudicative proceedings, courts should not intrude during the investigative stage.") (collecting cases).

### C.   As the Coast Guard Does Not Exceed Statutory or Regulatory Limits, the APA's Finality Requirement Stands

Bouchard also argues that the Coast Guard oversteps its statutory mandate, creating an exception to the finality requirement.  In theory, such a circumstance could present a rare but recognized exception.  *See Veldhoen*, 35 F.3d at 225 ("A claim that an agency action is in plain contravention of a statutory mandate, however, may present one of the

extraordinary exceptions to the finality requirement.") (citing *Coca-Cola Co.*, 475 F.2d at 303). Here, however, the manner in which the Coast Guard is performing this investigation falls squarely within statutory and regulatory boundaries.

Bouchard's grievances fall into three categories. First, Bouchard claims that the Coast Guard exceeds the scope of its authority by examining matters beyond the immediate cause of the fire and explosion aboard Barge B. No. 255. ECF No. 1 (Compl.) ¶ 13, subsecs. 13.a to 13.d. Second, Bouchard takes issue with certain evidentiary determinations made by the investigating officer. *Id.*, subsecs. 13.e to 13.g. Third, Bouchard argues that the designation of the decedent crew members' estates as parties in interest was improper. *Id.*, subsec. 13.h. Each claim is addressed in turn.

### 1.    Scope of the Investigation

Bouchard ask the Court to direct the Coast Guard to focus narrowly on the immediate cause of the fire and explosion aboard Barge B. No. 255. However, in so doing, Bouchard ignores the larger purpose of the investigation, which "is influenced primarily by the lessons to be derived from the casualty." 5 USCG Marine Safety Manual at A5-11. The Coast Guard hopes to prevent future accidents. To achieve this aim, the agency strives to "assure that every aspect of the case is probed." *Id*.

Although Bouchard decries the fact, it is necessary that the Coast Guard perform "a general investigation into the Bouchard companies, without limitation to the B-255 explosion." ECF No. 1 (Compl.) ¶ 13.a. To probe "every aspect of the case," as required by the USCG Marine Safety Manual, requires the thoroughness complained of here, *i.e.*, "[a]dmitting thousands of pages of exhibits, containing a broad spectrum of documents

related to the entire Bouchard companies' fleet and operation spanning decades." *Id*. ¶ 13.b.

Bouchard further observes that one investigation exhibit, Exhibit No. 25, dates back to December of 1999, and contends "[i]t is difficult to understand how this is relevant to Bouchard's operations in 2017, considering the rise of safety management systems since that time." *Id*. ¶ 13.e. But given an earlier fatal explosion in 2003, the question is whether Bouchard's safety management systems are effective.[10] The inquiry is a fair one.

The USCG Marine Safety Manual advises the investigating officer to cast a broad net. *See* USCG Marine Safety Manual at B4-2 to B4-4 (identifying an array of topics for inquiry, including, *e.g.*, staffing, personnel promotions or demotions, budgets, funding, material resources, organizational structure, communications, operational culture, values and beliefs, internal oversight, operational tempo, excessive workload, undue time pressure, schedules). And the agency's examination of Bouchard's "safety culture" is an essential review, not a "character attack," as Bouchard argues. ECF No. 1 (Compl.) ¶ 13.d.

The Coast Guard has administered Title 46, Chapter 63, in its current form for 35 years. In the agency's experience, accidents are often caused by more than one factor. *See* 5 USCG Marine Safety Manual at B7-7 (stating that usually "there is no single 'root-

---

[10] On February 21, 2003, an explosion occurred aboard Barge B. No. 125 while moored at a Port Exxon Mobil facility in Staten Island, New York. *See In re Bouchard Transp. Co*., No. 03-cv-894 (E.D.N.Y.), ECF No. 33 (Bouchard Answer) ¶ 9. As here, two persons were killed. *See generally id*., ECF No. 12 (Answer of the Banks Estate) & ECF No. 13 (Answer of the Kyne Estate). Another man suffered serious burns. *See generally id*., ECF No. 18 (Scandariato Answer).

cause,' instead there are **many causal factors** that all contribute in some way to the incident.") (emphasis original).  Accidents can result from what the agency describes as "latent unsafe conditions," by which the Coast Guard means "hazardous conditions in [a marine transportation] system that lie dormant, often for years, only becoming evident when they combine with an unsafe act or decision to become an active failure resulting in a negative outcome (event)."  *Id*. at B4-2.  In the pursuit of greater safety in the maritime industry, the Coast Guard explores the possibility of multiple causal agents.

### 2.    Evidentiary Rulings

Bouchard also takes issue with evidentiary rulings made by the investigating officer.  *Id*., subsecs. 13.e to 13.g.  And Bouchard seeks interlocutory reconsideration by the Court.  But just as a party generally cannot appeal a trial court's evidentiary rulings until a final judgment has been rendered, federal courts typically do not review a federal agency's evidentiary rulings prior to final agency action.  *See In re Willy*, 831 F.2d at 549 (declining review of an ALJ ruling and allowing the administrative process to go forward without interruption); *Am. Airlines*, 176 F.3d at 288 ("administrative tribunals . . . generally have been immune from interlocutory reviews of procedural decisions").

### 3.    Party in Interest Designations

Finally, Bouchard complains about designation of the decedent crew members' representatives as parties in interest.  ECF No. 1 (Compl.) ¶ 13.h.  As mentioned, the investigating officer determined that the decedent's representative had shown a direct interest.  Plainly that designation lies within his discretion.  Moreover, much of the evidence that concerns Bouchard would, in any event, almost certainly be attained through

discovery in the other civil actions.

### 4.    No Balancing of Interests Is Required

The overarching purpose of a marine casualty investigation is to safeguard life and property at sea.  *See* 46 C.F.R. § 4.07-1(b) ("The investigations of marine casualties and accidents and the determinations made are for the purpose of taking appropriate measures for promoting the safety of life and property at sea . . . .").  To achieve that end, Congress directed the Coast Guard to ascertain the cause of the casualty; whether the actions of particular individuals contributed to its occurrence; whether the action of an individual in the Coast Guard contributed to its occurrence; whether an act subjecting an offender to civil or criminal liability has been committed; and whether there is a need to amend or repeal existing laws or regulations, or to pass new ones, to prevent a similar casualty in the future.  *See* 46 U.S.C. § 6301.  Coast Guard officials are executing this broad mandate.

What Congress did not do is to direct the Coast Guard to perform a less in-depth investigation if the one being performed might cast a shadow over a vessel owner's business interests.  Just as the Coast Guard could, and did, maintain the investigation in *Veldhoen*—notwithstanding a potentially adverse effect on the merchant officers' careers—the agency can, and should, be allowed to proceed with this investigation without judicial intervention.

### III.   Bouchard Has No Clear Right to Mandamus Relief, the Coast Guard's Actions Are Discretionary, and the APA Offers a Sufficient Remedy

Last, in Count III, Bouchard argues that the Court should exercise its mandamus authority to compel Coast Guard officials to reverse the designation of the deceased and

injured crew members' estates as parties in interest and that the Court should limit the scope of the marine casualty investigation.[11]  *See* ECF No. 1 (Compl.) ¶¶ 29-34.

Mandamus is an "extraordinary remedy" used "only to compel the performance of a clear nondiscretionary duty."  *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Relief is available only if a plaintiff can establish:  (1) a clear right to the relief sought, (2) which defendants have a nondiscretionary duty to perform, and (3) that no other adequate remedy is available.  *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980).  Failure to prove any element is sufficient to deny mandamus relief.  *Id.*  Here, all three are missing.

First, there is no clear entitlement to the relief sought.  Federal courts generally do not step in to control the manner in which a federal agency investigates a regulated party. *See, e.g., Fleetwood Enter., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 818 F.2d 1188 (5th Cir. 1987) (reversing an order to issue a writ of mandamus to compel an informal, rather than a formal, agency hearing).

Second, "[m]andamus is not available to review discretionary acts of agency officials."  *Green v. Heckler*, 742 F.2d 237, 241 (5th Cir. 1984).  Plainly, the investigating officer's decision to designate representatives of the deceased crew members as parties in interest are discretionary.  *See* 46 C.F.R. § 4.03-10 ("The term *party in interest* shall mean any person whom the Marine Board of Investigation or the investigating officer shall find to have a direct interest in the investigation conducted by it and shall include an owner

---

[11]  The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff."  28 U.S.C. § 1361.

. . . .") (emphasis original); 5 USCG Marine Safety Manual at A5-14 ("A party in interest, as defined in 46 USC 6303 and 46 CFR 4.03-10, includes any individual, organization, or entity that a Marine Board or IO finds to have a direct interest, in the investigation being conducted, as well as those specifically listed in the statute.").  So too the investigating officer's evidentiary calls are discretionary.

Finally, as discussed above, the APA confers a right to judicial review on a person suffering legal wrong or adversely affected or aggrieved by agency action, except so far as judicial review is precluded by statute, or agency action is by law committed to agency discretion.  As APA review may be attainable at a later date, mandamus relief is not appropriate here.

### CONCLUSION

The types of relief that Bouchard seeks—declaratory judgment, injunctive relief, and mandamus—do not often proceed to trial on the merits.  More commonly, they are resolved on motion.  Plaintiffs brought this matter before the Court when they filed ECF No. 2 (Pls.' Verified Emergency Mot.).  Just as that motion was denied, *see* ECF No. 5 (Order), so too the accompanying complaint merits dismissal.

Accordingly, the federal defendants respectfully move for the dismissal of Bouchard's complaint under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56 in their favor.

Dated: August 30, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

RYAN K. PATRICK
United States Attorney

DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
S.D.I.D. 7959
1000 Louisiana Street, Suite 2300
Houston, TX 77002
Telephone:  (713) 567-9518
Facsimile:  (713) 718-3303
daniel.hu@usdoj.gov

*/s/ Michael A. DiLauro*
MICHAEL A.  DiLAURO
Senior Admiralty Counsel
Aviation & Admiralty Litigation
Torts Branch, Civil Division
U.S. Department of Justice
(overnight courier)
175 N Street, N.E., Suite 8.1815
Washington, DC 20002-3371
(mailing)
P.O. Box 14271
Washington D.C. 20044-4271
Telephone: (202) 616-4047
Facsimile: (202) 616-4159
michael.dilauro@usdoj.gov

Attorneys for the UNITED STATES OF
AMERICA

## CERTIFICATE OF SERVICE

It is hereby certified that on August 30, 2018, a copy of the foregoing was filed

electronically with the Clerk of the Court to be served by operation of the Court's electronic

filing system upon the following:

Jerry D. Hamilton
Karina Cerda-Collazo
Hamilton, Miller & Birthisel, LLP
150 Southeast 2nd Ave, Suite 1200
Miami, FL 33131
Tel. (305) 379-3686
jhamilton@hamiltonmillerlaw.com
kcerda@hamiltonmillerlaw.com

David James
Clark Hill Strasburger
2615 Calder Ave., Suite 240
Beaumont, TX 77702
Tel. (409) 351-3802
david.james@clarkhillstrasburger.com

Frederick William Mahley
Clark Hill Strasburger
909 Fanin St., Suite 2300
Houston, TX 77010
Tel. (713) 951-5633
bill.mahley@clarkhillstrasburger.com

*/s/ Michael A. DiLauro*
MICHAEL A. DiLAURO
Senior Admiralty Counsel

25